**Stevie COLE, Petitioner-Appellant,**

v.

**Warren YOUNG, Superintendent and the Attorney General of the State of Wisconsin, Respondents-Appellees.**

**No. 86–1308.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 28, 1986.

Decided April 28, 1987.

As Amended June 8, 1987.

Margaret A. Maroney, Wisconsin State Public Defender, Madison, Wis., for petitioner-appellant.

William L. Gansner, Wisconsin Dept. of Justice, Madison, Wis., for respondents-appellees.

Before FLAUM and EASTERBROOK, Circuit Judges, and WILL, Senior District Judge.*

WILL, Senior District Judge.

This appeal from the district court's denial of appellant Stevie Cole's petition for a writ of habeas corpus involves two relatively straight-forward questions: (1) whether at the time of Cole's offense Wisconsin law required proof of "great bodily harm" to support a mayhem conviction and, if it did, (2) whether federal law protects a criminal defendant from conviction by a jury that has received no instruction on an essential element of the crime charged. Based on the decisions of the Wisconsin appellate courts, we find that at the time Cole committed the acts in question great bodily harm was an essential element of Wisconsin's mayhem offense. We therefore address the constitutional question and conclude that the trial court's complete failure to instruct the jury on an essential element of mayhem was a violation of Cole's right to due process. Because the fourteenth amendment protects an accused from conviction except upon "proof beyond a reasonable doubt of every fact necessary to constitute the crime charged," *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), we reverse the district court and grant Cole's petition.

## I. Background

Following a jury trial in the Milwaukee County Circuit Court, Cole was found

* The Honorable Hubert L. Will, Senior District Judge of the Northern District of Illinois, is sitting by designation.

guilty of armed robbery, operating a vehicle without the owner's consent, and mayhem. He was sentenced to twelve years for armed robbery, twelve years consecutive for mayhem, plus two years concurrent for operating a vehicle without the owner's consent. Only the mayhem conviction is at issue in this appeal.

The charges against Cole grew out of an incident occurring in the early morning hours on December 20, 1980. Inez Johnson, a cab driver, was called to a Milwaukee address. When she arrived, four men entered her cab, three in the back seat and one, Stevie Cole, in the front. As Johnson began to drive away, Cole placed a knife to her neck, ordered her to pull over, and demanded money. Johnson handed over a purse containing approximately sixty dollars. Moments later, she reached up to turn on the overhead light. As she did so, Cole cut her three times on the left hand and arm with the knife. Johnson was then forced out of the cab and the four men drove away.

Three days later, Cole was arrested and charged as an habitual criminal with the three crimes mentioned above—armed robbery, operating a vehicle without the owner's consent, and mayhem. The charges were tried to a jury in late February, 1981. At trial, Johnson testified that she was taken to a hospital emergency room shortly after the incident. There she was given a shot to prevent infection and stitches to close her wounds. She received three stitches in one cut and five in another; the third cut, the doctor told her, would heal by itself without stitches. As a result of the cutting, Johnson has two scars, one in a semicircle one to one and one-half inches long on her left wrist, and another about two and one-half inches long on the palm of her left hand. Since the incident, she occasionally feels pain in her hand when she is driving.

At the close of the evidence, the trial court and counsel held a jury instructions conference. The trial court proposed to give the then-current Wisconsin pattern instruction on the elements of the crime of mayhem. Though the instruction, No. 1230

of the Wisconsin pattern criminal jury instructions, has since been revised to include great bodily harm as an element of mayhem, at the time of trial it contained only two elements: (1) a cutting or mutilation (2) performed with an intent to disfigure. Neither side objected to the giving of the pattern instruction and the trial court used it almost verbatim. The jury found Cole guilty of each of the three crimes charged.

In September, 1981 Cole—through his new counsel, an assistant state public defender—filed a post-conviction motion raising for the first time his objection to the jury instructions on mayhem. Cole argued that under *Kirby v. State*, 86 Wis.2d 292, 272 N.W.2d 113 (Ct.App.1978), a conviction for mayhem requires proof that the victim suffered great bodily harm. Since the instructions did not inform the jury of this requirement, Cole concluded, his rights to due process and to a jury trial were violated. The trial court, finding that *Kirby* was not controlling and that the pattern instruction properly informed the jury of the elements of mayhem, denied Cole's motion for a new trial.

Cole appealed to the Wisconsin Court of Appeals. On appeal, Cole again maintained that the jury instructions were erroneous under *Kirby*, resulting in a violation of his constitutional rights. The state, in its briefs, argued that *Kirby* was wrongly decided; that the language in *Kirby* stating that great bodily harm was an element of mayhem was dicta and should not be followed; and that the fact that the Wisconsin Criminal Jury Instructions Committee had not amended its instruction No. 1230 in the three years since *Kirby* was decided was persuasive evidence that the instruction correctly stated the law.

In an unpublished opinion, the Wisconsin Court of Appeals affirmed Cole's conviction. Curiously, the opinion—which was authored by the same judge who wrote the *Kirby* opinion—contained no discussion of *Kirby* or the issue it presented, despite the thorough treatment given these questions in the parties' briefs. The opinion merely hinted at the problem in the sentences that follow:

The defendant argues that the jury was not properly instructed on the essential elements of mayhem. The trial court gave the pattern jury instruction,[7] which includes the essential elements of the crime. The defendant did not object to the instruction as given.[8]

---

[7] Wis J I—Criminal 1230.

[8] *See State v. Paulson,* 106 Wis.2d 96, 101–02, 315 N.W.2d 350, 353 (1982), and secs. 805.-13(3) and 972.11(1), Stats.

*State v. Cole,* No. 81–1938–CR, slip op. at 3–4 (Wis.Ct.App. July 20, 1982) [108 Wis.2d 779, 324 N.W.2d 829 (table)] (unpublished opinion). Following the court of appeals decision, Cole filed a petition for discretionary review in the Wisconsin Supreme Court. On September 20, 1982, the Wisconsin Supreme Court denied review.

One month later, in October of 1982, the Wisconsin Criminal Jury Instructions Committee revised its mayhem instruction in accordance with the *Kirby* decision.[1] In January 1983, Cole filed his petition for writ of habeas corpus in the district court. Not surprisingly, in their briefs to the district court the parties reversed their earlier positions on the persuasiveness of the Instructions Committee's determinations, Cole arguing that the revision of No. 1230 reflected the change in the law effected by *Kirby* and the state discounting the revision's significance. The parties also briefed the constitutional questions involving the mayhem instruction. Significantly, the state did not argue that habeas review of Cole's claims was barred by his failure to object at trial.

The district court, however, found that Cole's failure to make a contemporaneous objection was dispositive. Noting that the Wisconsin Court of Appeals had mentioned Cole's failure to object while citing cases and statutes on the state's contemporaneous objection rule, the district court determined that the court of appeals had "implicitly" found waiver. Applying the "cause and prejudice" standard of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the court found that Cole could not establish cause since *Kirby* had been on the books for two years prior to Cole's trial. Accordingly, the district court concluded that Cole was barred from asserting his constitutional claim in federal habeas corpus proceedings.

## II. Waiver of the State's Contemporaneous Objection Rule

Before reaching the ·merits, we must first consider whether habeas review is barred by Cole's failure to raise a timely objection to the mayhem jury instruction. Ordinarily, this determination would depend on whether the Wisconsin Court of Appeals had relied on the state's contemporaneous objection rule as an independent though not necessarily a sole ground of decision, *see Goins v. Lane,* 787 F.2d 248, 251 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 165, 93 L.Ed.2d 103 (1986), and whether Cole had established "cause and prejudice" for his procedural default. *See Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53

---

1. The revised pattern instruction provides in relevant part as follows:

Before a defendant may be found guilty of mayhem, the State must prove by evidence which satisfies you beyond a reasonable doubt that there were present the following three elements of this offense:

First, that the defendant cut or mutilated the (tongue) (eye) (ear) (nose) (lip) (limb) (*name other bodily member*) of (*name of victim*).

Second, that the cutting or mutilation caused great bodily harm to (*name of victim*).

Third, that the defendant intended to disable or disfigure (*name of victim*).

\* \* \* \* \* \*

The second element of this offense requires that the cutting or mutilation caused great bodily harm to (*name of victim*).

"Great bodily harm" means serious bodily injury. [Injury which creates a high probability of death or which causes serious permanent disfigurement or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury is great bodily harm.]

*Wisconsin Jury Instructions—Criminal,* No. 1230 (1980 & rev. 1982) (footnotes omitted). In the footnotes to this instruction, the drafters cite *Kirby* as authority for the great bodily harm requirement.

L.Ed.2d 594 (1977). Indeed, the district court analyzed the problem in just this way.

■ This is not the ordinary case, however. Here, as in *Barrera v. Young*, 794 F.2d 1264 (7th Cir.1986), the Attorney General has waived any reliance on Wisconsin's contemporaneous objection rule. During proceedings in the district court, the Attorney General simply ignored the issue; in this court, the Attorney General has gone further, explaining in his brief that "the state believes it appropriate for this court to consider the merits of Cole's challenge to the instruction." As we explained in *Barrera*, there is no reason why a state should not be able to waive its own forfeiture rule as readily through its executive branch as through its courts. The state is free to allocate responsibilities between the branches of its government in the best way it sees fit. Any other rule would subvert the principle of federalism *Wainwright* is designed to protect. *Barrera*, 794 F.2d at 1269. Of course, this approach also implies that the state may retract the Attorney General's authority to waive reliance on the state's forfeiture rule. *Id.* But if the state wants a federal court decision in a case that might otherwise be barred from habeas review under *Wainwright*, it can have one.

### III. Elements of Mayhem Under Wisconsin Law

■ The only basis for granting federal habeas relief is a violation of federal statutory or constitutional law. *Mosley v. Moran*, 798 F.2d 182, 185 (7th Cir.1986). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982). The ultimate question before us, then, is not whether the mayhem instruction given at Cole's trial was erroneous as a matter of state law, but whether it deprived Cole of any federally-protected right. Cole maintains that the Constitution protects him from being convicted upon an instruction that fails to inform the jury of an essential element of the offense charged. This is, of course, a federal law question, but it is based on a particular understanding of Wisconsin law. Before reaching the merits of Cole's constitutional claim, therefore, we must determine whether his view of Wisconsin law is correct; that is, did Wisconsin law at the time of Cole's offense require that a mayhem conviction be supported by proof of great bodily harm?

### A. The Mayhem Statute

■ On its face, the Wisconsin mayhem statute says nothing about great bodily harm. Section 940.21 of the Wisconsin Statutes provides that "Whoever, with intent to disable or disfigure another, cuts or mutilates the tongue, eye, ear, nose, lip, limb or other bodily member of another, is guilty of a class B felony." Our inquiry is not confined to the language of the statute, however. Under Wisconsin law, an appellate court's construction of a statute becomes as much a part of the law as if the legislature had enacted it. *Champlin v. State*, 84 Wis.2d 621, 267 N.W.2d 295 (1978); *State ex rel. Klinger & Schilling v. Baird*, 56 Wis.2d 460, 202 N.W.2d 31 (1972). Moreover, an officially published opinion of the Wisconsin Court of Appeals has statewide precedential effect. Wis. Stats. § 752.41(2). These rules are binding on us as well, for "State courts are the ultimate expositors of their own states' laws and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of that state except in extreme circumstances, none of which are present here." *Mendiola v. Estelle*, 635 F.2d 487, 489 (5th Cir.1981).

Cole's contention is that the great bodily harm element of mayhem derives from the Wisconsin Court of Appeals decision in *Kirby v. State*, 86 Wis.2d 292, 272 N.W.2d 113 (Ct.App.1978). To determine whether Cole is correct, we must examine the *Kirby* decision.

### B. The *Kirby* Decision

To place *Kirby* in context, it should first be noted that *Kirby* is only the second

Wisconsin appellate opinion reported during the last century to consider the elements of the crime of mayhem. (The first was *State v. Carli*, 2 Wis.2d 429, 86 N.W.2d 434 (1957), *cert. denied*, 357 U.S. 907, 78 S.Ct. 1151, 2 L.Ed.2d 1157 (1958)). The reason for the paucity of case law, as the state explained at oral argument, is that mayhem has become something of an anachronism in Wisconsin's criminal law, largely superseded by more "modern" crimes. *See, e.g.*, Wis.Stats. § 940.19 (battery and aggravated battery); Wis.Stats. § 940.23 (injury by conduct regardless of life); Wis.Stats. § 940.24 (injury by negligent use of weapons); Wis.Stats. § 941.30 (endangering safety by conduct regardless of life). Thus, prosecutors rarely charge offenders with mayhem anymore. Nevertheless, cases still arise, perhaps because mayhem, unlike its modern counterparts which carry lesser penalties, is a class B felony carrying a sentence of up to twenty years in prison. Wis.Stats. § 939.50(3)(b).[2]

In *Kirby*, the defendant was charged with mayhem for participating in an incident in which a woman was tied to a bed and tortured for a five-hour period. At trial, the evidence showed that the victim had been beaten with curtain rods, an electrical cord, and a belt. Her assailants had thrown lighted cigarettes and matches on her. Kirby's own acts "included pouring salt and shaving lotion on her back and legs and attempting to shave her head after her hair was cut by others." 272 N.W.2d at 114. The victim suffered a fractured rib, burns, and scars on her legs in addition to psychological injuries requiring hospitalization.

At the close of the evidence, the trial court, finding this evidence insufficient to support a mayhem conviction, dismissed the charge. Instead, the trial court submitted to the jury charges of injury by conduct regardless of life under Wis.Stats. § 940.23 (hereinafter "injury") and endangering safety by conduct regardless of life under Wis.Stats. § 941.30 (hereinafter "endangering safety"). The jury convicted the defendant only on the endangering safety charge.

On appeal, Kirby contended that the trial court had erred in submitting the injury and endangering safety charges to the jury because these charges were not lesser included offenses of mayhem.[3] In particular, Kirby maintained that injury required proof of great bodily harm and that such proof was not required for a mayhem conviction. The Wisconsin Court of Appeals disagreed. Relying on *State v. Carli, supra*, the court held that the "cuts or mutilates" element of mayhem necessarily includes the infliction of great bodily harm. The court reasoned as follows:

> Although at common law mayhem required proof of mutilation or dismemberment that affected one's combat ability, the statutory enactments creating the crime have not required such extensive mutilation or disfigurement. Nonetheless, "cuts or mutilates" as used in the statute requires proof of an act of greater severity than a mere nick with a knife. We believe that "cutting or mutilation," a statutory element of mayhem, requires an injury that constitutes "great bodily harm" as interpreted in *LaBarge* [*v. State*, 74 Wis.2d 327, 246 N.W.2d 794 (1976)], and required as an element of injury by conduct regardless of life.

**2.** Mayhem is thus placed in the same punishment category as second-degree murder, Wis. Stats. § 940.02, armed robbery, § 943.32(2), first degree sexual assault, § 940.225, and kidnapping, § 940.31, all of which are class B felonies. By contrast, such offenses as manslaughter, § 940.05, aggravated battery, § 940.19(2), and injury by conduct regardless of life, § 940.-23, are class C felonies punishable by a fine up to $10,000 and imprisonment up to ten years, § 939.50(3)(c); endangering safety by conduct regardless of life, § 941.30, is a class D felony punishable by a fine up to $10,000 and imprisonment up to five years, § 939.50(3)(d); and

injury by negligent use of weapons, § 940.24, is a class E felony punishable by a fine up to $10,000 and imprisonment up to two years. § 939.50(3)(e).

**3.** The rule in Wisconsin is that a reduced charge may be submitted only if it is a lesser included offense of the original charge. 272 N.W.2d at 116. A lesser included offense is one which "does not require proof of any fact in addition to those which must be proved for the crime charged." Wis.Stats. § 939.66(1).

272 N.W.2d at 117 (footnotes omitted). Because an injury conviction did not require proof of any fact in addition to those required for a mayhem conviction, the court concluded that injury was properly submitted to the jury. Moreover, since endangering safety was a lesser included offense of injury, it followed that endangering safety was also properly submitted. *Id.*

The next question was whether the evidence could be reasonably viewed as "support[ing] conviction of the lesser offense while leaving reasonable doubt as to the accused's guilt of the charged offense." *Id.* Reviewing the evidence, the court concluded that the jury could reasonably have determined that the state had not carried its burden on the mayhem and injury charges, but that it had carried its burden on the endangering safety charge. Accordingly, the court concluded that the submission of the lesser included offenses was proper and it affirmed the conviction. 272 N.W.2d at 117–18.

### C. *Kirby* on Mayhem: Dicta or Binding Precedent?

The Attorney General argues that the *Kirby* court's discussion of the elements of mayhem was dicta. If the Attorney General is correct, then we are not bound by this aspect of the *Kirby* decision, for Wisconsin follows the common law rule that dicta— statements of law going beyond the particular facts of the case—do not constitute binding precedent. *See Beloit Corp. v. Department of Industry, Labor and Human Relations*, 63 Wis.2d 23, 216 N.W.2d 233, 238 (1974); 1 *Callaghan's Wisconsin Pleading & Practice* § 2.95 (1978). In the Attorney General's view, the *Kirby* court's finding that mayhem required proof of great bodily harm was unnecessary be- cause Kirby was acquitted of injury, which was the only charge submitted to the jury that contained an element of great bodily harm.

Apparently, the Attorney General believes that the result of *Kirby* would not have changed even if Kirby had prevailed in his argument that the injury charge was erroneously submitted. However, every indication in the opinion and the law of Wisconsin at the time of the opinion is to the contrary. Had Kirby prevailed, his conviction for endangering safety would have had to be reversed.

Wisconsin law recognizes that the erroneous submission of a criminal charge can create an unacceptable risk of a compromise verdict. Even if one is acquitted of the erroneous charge, the error may result in a wrongful conviction on another charge. *See, e.g., State v. Williford*, 103 Wis.2d 98, 307 N.W.2d 277 (1981); *Ross v. State*, 61 Wis.2d 160, 211 N.W.2d 827 (1973). In *Kirby*, it was essential that the submission of the injury charge be found proper, for if it was not the endangering safety conviction could have represented a compromise. Faced with a choice between acquittal and conviction on the endangering safety charge alone, the jury might have chosen an acquittal.[4] To determine whether injury was properly submitted, the court therefore had to decide whether a mayhem conviction required proof of great bodily harm.

Wisconsin law also seeks to minimize the risk of erroneous convictions through its rule that a lesser included offense can only be submitted if a reasonable view of the evidence supports both an acquittal on the charged offense and a conviction on the lesser offense.[5] In the somewhat unusual

---

**4.** As the court explained in *Ross v. State*, 61 Wis.2d 160, 211 N.W.2d 827 (1973):

> To give an instruction on a lesser included offense when the commission of that lesser included offense is not reasonably shown by the evidence is no favor to a defendant. The inclusion of a doubtful lesser included offense is likely to result in a jury's compromise to the detriment of the defendant. Numerous cases arise in which the proper alternative for the jury is either the conviction on the major crime or a complete acquittal. To superflu-

ously add to the verdict a lesser included offense may well in some cases result in the defendant being found guilty of that offense when a verdict of not guilty should have been returned.

211 N.W.2d at 832.

**5.** The *Kirby* court implicitly acknowledged that the underlying purpose of the rule is to protect against compromise verdicts when it stated: "[W]e do not view the jury's verdict as a compromise of its duty to choose between acquittal

posture of the *Kirby* case, this meant that the court, in order to uphold the conviction, had to find that each of four potential outcomes were supported by a reasonable view of the evidence: (1) an acquittal for mayhem, (2) a conviction for endangering safety, (3) an acquittal for injury, and (4) a conviction for injury. (Because injury was both a lesser included offense of mayhem and a greater offense of endangering safety, the court had to find that either outcome, as to injury, would have been reasonable). For our purposes, the essential point is that the court, in reviewing Kirby's endangering safety conviction, had to decide whether Kirby's acquittal for mayhem was supported by a reasonable view of the evidence. This decision, in turn, required the court to consider the evidence in relation to the elements of mayhem, including great bodily harm. The court concluded, somewhat reluctantly but without equivocation, that the evidence could be reasonably viewed as failing to establish the elements of mayhem. 272 N.W.2d at 117.

▇ To summarize, the *Kirby* court's determination that great bodily harm is an essential element of mayhem was necessary to its analysis at two points. First; it was necessary to the finding that injury was a lesser included offense of mayhem and that it was, therefore, properly submitted to the jury. Second, it was necessary to the finding that Kirby's acquittal for mayhem was supported by a reasonable view of the evidence. Each of these findings, in turn, formed an essential part of the court's ultimate holding affirming Kirby's conviction for endangering safety.

In short, *Kirby* 's holding that a mayhem conviction requires proof of great bodily harm was necessary to its decision and has full precedential effect under Wisconsin law. Accordingly, it is binding on us as well, for the Wisconsin courts, not we, are the ultimate expositors of Wisconsin law.

### D. Was *Kirby* Wrongly Decided?

The Attorney General also maintains that the *Kirby* court misconstrued the Wisconsin Supreme Court's decision in *State v. Carli, supra.* According to the Attorney General, *Carli* found that mayhem contained an element of great bodily harm *on the facts of that case.* Since *Carli,* however, the Wisconsin Supreme Court has rejected the "facts presented" test in favor of a "legal elements only" test for determining lesser included offenses. *Randolph v. State,* 83 Wis.2d 630, 266 N.W.2d 334 (1978). Thus, the Attorney General concludes that *Kirby* was wrongly decided.

This argument need not detain us long. It is not our place to determine whether *Kirby* was correctly decided. Our sole task is to ascertain the applicable Wisconsin law, and *Kirby* was the law in effect at the time of Cole's offense. We note, however, that the *Kirby* court expressly disclaimed any reliance on the "facts presented" test, stating that it was "mindful of the admonition of the Wisconsin Supreme Court that we are only to be concerned with 'the legal elements of the crimes, and not with the particular facts established in the case at hand.'" *Kirby,* 272 N.W.2d at 117. Moreover, the court did not rely solely on *Carli,* but independently reached the conclusion that proof of great bodily harm was required.[6]

### E. Significance of the Instructions Committee's Determinations

Our reading of *Kirby* finds support in the Wisconsin Criminal Jury Instructions

---

and conviction by selecting a lesser included crime not supported by a reasonable view of the evidence." 272 N.W.2d at 117–18.

**6.** Finally, we note that in a recently decided case, the Attorney General took precisely the opposite position, arguing that *Kirby* was correctly decided and should be followed. App. to Petitioner's Reply Br. at 101–08 (containing excerpts from plaintiff-respondent's brief in *State v. Webie,* (Wis.Ct.App.1987)) [— Wis.2d —, 405 N.W.2d 83 (table)]. Among other reasons for

reaffirming *Kirby's* holding on great bodily harm, the Attorney General noted that mayhem carries a maximum sentence of twenty years whereas endangering safety carries a maximum sentence of five years. *Id.* at 105. Not surprisingly, in *Webie* as in *Kirby* the state stood to gain by a finding that mayhem included great bodily harm as an essential element.

The court of appeals decision in *Webie* is discussed *infra* at section V.

Committee's 1982 decision to include great bodily harm as an element of mayhem. *See supra* n. 1 and accompanying text. In a footnote to the revised No. 1230, the Committee made clear that the change was necessitated by *Kirby*. *Id.* Why it took the Instructions Committee four years to catch up with *Kirby* is not evident; perhaps the sparsity of mayhem cases was a contributing factor. In any event, the date of the revision is not important. What counts is that the legal development that spurred the revision took place more than two years prior to Cole's offense, in October 1978 when *Kirby* was decided.

Though the Committee's determinations do not carry independent force of law, the Wisconsin courts have often found them to be persuasive evidence of what the law is. *See, e.g., State v. Saternus*, 127 Wis.2d 460, 381 N.W.2d 290 (1986). As the Wisconsin Supreme Court has stated, the pattern instructions "are the product of painstaking effort of an eminently qualified committee of trial judges, lawyers, and legal scholars, designed to accurately state the law and afford a means of uniformity of instructions throughout the state." *State v. Kanzelberger*, 28 Wis.2d 652, 137 N.W.2d 419, 422–23 (1965). Indeed, in this very case, the Wisconsin Court of Appeals appeared to rely on the giving of the then-current pattern instruction as a ground for affirming Cole's conviction. *See State v. Cole*, slip op. at 3–4. We conclude that a Wisconsin court would give weight to the Committee's determinations, and therefore so do we.

## IV. Interpreting *State v. Cole*

We have found that at the time of Cole's offense Wisconsin law provided that proof of great bodily harm was needed to support a mayhem conviction. It remains to be seen what effect, if any, the court of appeals decision *in Cole's case* has on the state of the law.

The Attorney General reads the *State v. Cole* opinion as repudiating *Kirby* and holding that great bodily harm is not an element of mayhem. Cole rejects this the-sis as untenable. We agree with Cole for several reasons.

First, as mentioned previously, the *State v. Cole* opinion contains no discussion of *Kirby* nor even a citation to it. Neither does the opinion so much as mention the phrase "great bodily harm." Although the court did note that "The trial court gave the pattern instruction, which includes the essential elements of the crime," slip op. at 3–4, we cannot read this isolated and conclusory assertion as overruling *Kirby*. Not only is the assertion based on a mistaken presumption of the correctness of the pattern instruction but, read in context, it does not appear to be directed at the *Kirby* great bodily harm question at all. (The remainder of the paragraph in which it appears addresses an entirely separate instructions issue, not raised before this court, concerning the element of *intent*). We decline to assume that the Wisconsin Court of Appeals would overrule one of its precedents in so casual and offhand a manner, much less *sub silentio*.

Second, *Kirby* was a published opinion entitled to statewide precedential effect, Wis.Stats. § 752–41(2), whereas *State v. Cole* was an unpublished opinion having no precedential value. Wis.Stats. § 809.23(3). Wisconsin lawyers are admonished under pain of possible sanctions not even to cite unpublished opinions. *See Tamminen v. Aetna Cas. & Surety Co.*, 109 Wis.2d 536, 327 N.W.2d 55 (1982). Given the lowly status of unpublished opinions under Wisconsin law, it is inconceivable that *State v. Cole* was intended to overrule anything. *See* Wis.Stats. § 809.23(1)(a) ("criteria for publication in the official reports ... include whether the opinion ... [e]nunciates a new rule of law or modifies, clarifies or critiques an existing rule.").

A third reason for rejecting the Attorney General's expansive interpretation of *State v. Cole* is that, so read, the decision raises serious due process concerns. In *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), the Supreme Court reversed several convictions that rested on an unexpected construction of South Carolina's criminal trespass statute

by the state supreme court. Observing that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law," *id.* at 353, 84 S.Ct. at 1702, the Court held that a state may not, through judicial interpretation, alter the elements of a crime so as to deny the accused fair warning of the acts prohibited. *Id.* at 353–54, 84 S.Ct. at 1702–03; *see also Douglas v. Buder,* 412 U.S. 430, 93 S.Ct. 2199, 37 L.Ed.2d 52 (1973); *Rabe v. Washington,* 405 U.S. 313, 92 S.Ct. 993, 31 L.Ed.2d 258 (1972); *United States ex rel. Reed v. Lane,* 759 F.2d 618 (7th Cir.1985), *cert. denied,* —— U.S. ——, ——, 106 S.Ct. 1268, 1282, 89 L.Ed.2d 577, 589 (1986).

The Court explored some of the implications of *Bouie* in *Marks v. United States,* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), a case decided under the fifth amendment's due process clause. *Marks* held that the test for obscenity announced in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), could not be applied retroactively to persons indicted for conduct occurring under the regime of *Memoirs v. Massachusetts,* 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), previously the leading case on what constituted obscenity. Despite the fact that *Miller,* not *Memoirs,* announced the "correct" first amendment test, *Miller's* expansion of the accused's potential criminal liability precluded its retroactive application. 430 U.S. at 196, 97 S.Ct. at 995.

*Marks* makes two points pertinent to this case: first, a decision overruling a prior interpretation of a criminal statute is (or at least is ordinarily) "unforeseeable" under *Bouie;* and second, the fact that a judicial construction restores the correct understanding of the law is of no consequence in determining whether its retroactive application violates due process.

▮ In light of these principles, it is clear that the *State v. Cole* court was not free to overrule *Kirby* retroactively and apply a newly enlarged definition of mayhem to Cole's case. Even if the court had rejected *Kirby's* holding that great bodily harm is an element of mayhem, the princi-

ple of fair warning would have required that the decision not be given retroactive effect. Retroactivity would have been permissible only if the repudiation of *Kirby* was somehow "foreseeable," which it almost certainly was not. Given the ample indications that *State v. Cole* was not intended to overrule *Kirby,* and the considerable due process problems raised by such an interpretation, we conclude that *State v. Cole* did not overrule *Kirby.*

*State v. Cole* can only be read as expressing no view on the viability of *Kirby.* The Attorney General of Wisconsin must have so read *Cole* when he contended in his brief in a subsequent case, *State v. Webie,* that great bodily harm was and is an essential element of mayhem under Wisconsin law. *See supra* n. 6. A Wisconsin court would not find meaning in the court of appeals' silence in *Cole,* nor should we. We must, therefore, reject the Attorney General's and the dissent's effort to interpret the brief, unpublished *Cole* opinion as holding that a mayhem conviction does not require proof of great bodily harm. The decisions in *Kirby* and *Webie* together with the revised Wisconsin pattern instruction, promulgated three months after the cryptic opinion in *Cole,* all make clear that great bodily harm remains an essential element of mayhem under Wisconsin law.

## V. Subsequent Developments in Wisconsin Law

In a case decided during the pendency of this appeal, the Wisconsin Court of Appeals expressly declined to reconsider *Kirby*'s holding on great bodily harm. *State v. Webie,* (Wis.Ct.App.1987) [—— Wis.2d ——, 405 N.W.2d 83 (Table)]. At the same time, the court overruled other aspects of the *Kirby* decision. *Id.* at 11. Recognizing that our ultimate concern is with Wisconsin law as it stood at the time of Cole's offense, not with any subsequent changes in the law, we will examine the *Webie* opinion solely for the purpose of determining whether it confirms or casts doubt on our interpretation of *Kirby.*

Factually, *Webie* is nearly indistinguishable from *Kirby*. In both cases, the defendant was charged with mayhem, the trial court instructed the jury on injury and endangering safety as lesser included offenses of mayhem, and the defendant was acquitted of mayhem and injury but convicted of endangering safety. In *Webie*, as in *Kirby*, the court was required to find the essential elements of these three offenses to determine whether injury or endangering safety were in fact lesser included offenses of mayhem.

The *Webie* court began its analysis by refusing to reexamine *Kirby*'s "addition of the 'great bodily harm' requirement to the 'cutting or mutilation' element of mayhem." Slip op. at 7. Rather, the court assumed that the mayhem statute "continues to incorporate the unexpressed great bodily harm requirement." *Id.* at 8. Nevertheless, the court concluded that injury and endangering safety are *not* lesser included offenses of mayhem. Both injury and endangering safety require proof of conduct that is dangerous to life and may cause death, the court found; great bodily harm, by contrast, can occur without endangering the victim's life. The court therefore rejected *Kirby*'s "assumption that under all circumstances great bodily harm equals or includes conduct regardless of life." *Id.* at 7. Accordingly, the court overruled *Kirby*'s holding that injury and endangering safety are lesser included offenses of mayhem and reversed the defendant's conviction. *Id.* at 11.

*Webie* simply confirms our reading of *Kirby*. It makes clear that *Kirby*'s statements concerning the elements of mayhem are not dicta, but part of the holding of the case. While *Webie* overrules the lesser included offense part of the *Kirby* holding, it leaves the great bodily harm requirement—which is the only part of the *Kirby* holding relevant here—intact. Even if the Wisconsin courts or legislature were to repudiate *Kirby*'s holding on great bodily harm at some future date, no such change in the law could be applied retroactively to Cole, for reasons we have already explained. For the definitive statement of Wisconsin law pertinent to Cole's challenge, therefore, we must still look to *Kirby*.[7]

---

7. The dissent makes five main arguments in opposition to our conclusion on the state law question. First, the dissent makes much of the fact that *Kirby* was "overruled" by *Webie*. As our discussion of *Webie* makes clear and the dissent ultimately concedes, *Webie* explicitly left standing the only portion of the *Kirby* holding relevant here; that is, that a mayhem conviction requires proof of great bodily harm. So the dissent's first argument is based on false premises and self-destructs.

Second, the dissent cites numerous cases standing for the proposition that federal courts must accept state court determinations of state law. As we have made abundantly clear in text, we do not take issue with this well established proposition. The question in this case is not whether deference to state court determinations is called for, but whether the law we defer to favors Cole or the Attorney General. The dissent merely confuses the grounds of debate when it suggests that the court is split on this point.

We agree that state court determinations of state law control. We conclude, however, that the Wisconsin courts in *Kirby* and *Webie* held that great bodily harm is an essential element of mayhem under Wisconsin law. *State v. Cole* said nothing on the great bodily harm question, so that case cannot be said to have "resolved the disputed question of state law between the very parties to the federal litigation." *Post*, at 431.

Third, the dissent charges us with holding the Wisconsin Court of Appeals to too high a standard of clear opinion-writing. This criticism completely misapprehends the nature of our inquiry in § IV. The question is not whether the Wisconsin Court of Appeals used a satisfactory writing style, but whether it said anything at all on the *Kirby* great bodily harm question. The dissent offers no basis for finding that it did. A simple reading of the *State v. Cole* opinion makes clear that it did not.

Fourth, the dissent argues that the great bodily harm discussion in *Kirby* is dicta, but it offers no reason for viewing it as such. Instead, the dissent, while purporting to rely on a rule of deference to state court determinations, reaches a conclusion that is directly contrary to that reached by the Wisconsin courts in the only two cases to address the question. *Kirby* and *Webie* both expressed the view that the resolution of the great bodily harm question was essential to the *Kirby* holding and was, therefore, not dicta.

Finally, the dissent asserts that the *judgment*, rather than the opinion, in the state courts provides the source of preclusion in this case. As far as it goes, this assertion is correct, but it begs the question of what the state court judgment represents. It is common practice to define the scope of a judgment by referring to the reasoning offered in support of it by the rendering court. The Supreme Court has done so in a

## VI. Instructional Error as a Constitutional Violation

■ We have found that Cole was convicted of mayhem without any jury instruction being given on great bodily harm, which is an essential element of mayhem under Wisconsin law. Cole contends that a conviction under these circumstances violates the fourteenth amendment's due process clause. To prevail on this claim, Cole must carry a heavy burden. Instructional error will not support a petition for federal habeas relief unless it is shown "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,'" *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973), but that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147, 94 S.Ct. at 400; *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). We hold that the complete failure to give any jury instruction on an essential element of the offense charged, under circumstances indicating

that the jury was not otherwise informed of the necessity of proof of the element, is a violation of due process.

### A. Failure to Instruct on an Essential Element

State and federal courts alike have long recognized that the failure to give any instruction on an essential element of a criminal offense is fundamental error, requiring reversal of the defendant's conviction. *See, e.g., United States v. Howard*, 506 F.2d 1131 (2d Cir.1974); *Byrd v. United States*, 342 F.2d 939 (D.C.Cir.1965); *United States v. Greichunos*, 572 F.Supp. 220 (N.D.Ill.1983); C. Wright, *Federal Practice and Procedure* Crim.2d § 487 (1982) (collecting federal cases); 75 Am.Jur.2d Trial §§ 710–18 (1974) (collecting state cases). Of the many cases standing for this principle however, only a few have rested on a federal constitutional ground of decision. *See, e.g., United States v. Voss*, 787 F.2d 393 (8th Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986); *Ba-*

---

wide variety of contexts, including many cases involving state criminal law questions. *See, e.g., Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978) (in habeas corpus case, ambiguity in state court opinion as to state law basis of decision necessitated remand, where state law determination formed predicate of petitioner's constitutional argument); *Vachon v. New Hampshire*, 414 U.S. 478, 94 S.Ct. 664, 38 L.Ed.2d 666 (1974) (due process violated when no evidence in record supported conviction under criminal statute as construed by state supreme court in case under review); *Bouie v. City of Columbia, supra* (prior state law consulted to inform Court's interpretation of judgment; so interpreted, judgment found unconstitutional); *Garner v. Louisiana*, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961) (prior state law consulted to shed light on conclusory state supreme court opinion; judgment found unconstitutional); *Cole v. Arkansas*, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948) (due process violated when state supreme court affirmed conviction in opinion resting on state law ground not presented to jury). We do no more here. The dissent's apocalyptic rhetoric—*see, e.g., post*, at 429 ("until today no American court has denied that rulings on issues of state law, fully litigated in state court, are conclusive in subsequent federal collateral litigation"); *post*, at 435 ("No case in the history of the Republic supports such intrusive review of state court decisions")—is nothing but rhetoric, unfortunately predicated on the false premise that the great bodily harm

question was "already determined between the parties to the case." *Post*, at 429. Our decision breaks no new ground.

None of the dissent's authorities forbid us from consulting a state court's opinion, as well as the preexisting body of state law, in the course of ascertaining the scope and meaning of the judgment under review. On the contrary, in each of the cases the dissent relies on the Supreme Court looked beyond the state court judgment, finding that the judgment could be reconciled with preexisting state law without running afoul of the Constitution. Indeed, in each case, the Court found that even if a state law error had occurred, no constitutional violation was established. *See Gryger v. Burke*, 334 U.S. 728, 731, 68 S.Ct. 1256, 1257, 92 L.Ed. 1683 (1948); *Bute v. Illinois*, 333 U.S. 640, 672–74, 68 S.Ct. 763, 779–81, 92 L.Ed. 986 (1948); *Patterson v. Colorado*, 205 U.S. 454, 461, 27 S.Ct. 556, 557, 51 L.Ed. 879 (1907).

Here, by contrast, as we demonstrate, there is no conceivable constitutionally permissible state law ground for upholding Cole's conviction. Either *State v. Cole* overruled *Kirby* retroactively, in violation of *Bouie*, or it left *Kirby* standing, in which case Cole was convicted without a jury instruction on an essential element of mayhem. So viewed, this is not simply, as the dissent maintains, a case in which the state court failed to supply adequate reasoning in support of its judgment; it is one in which no reason consistent with the Constitution can be *imagined*, even after the fact of affirmance.

tiste v. Blackburn, 786 F.2d 704 (5th Cir. 1986); Potts v. Zant, 734 F.2d 526 (11th Cir.1984), cert. granted and judgment vacated on other grounds, —— U.S. ——, 106 S.Ct. 3328, 92 L.Ed.2d 734 (1986); Glenn v. Dallman, 686 F.2d 418 (6th Cir.1982); Mills v. Shepherd, 445 F.Supp. 1231 (W.D. N.C.1978), aff'd mem., 605 F.2d 1203 (4th Cir.1979). Nevertheless, "the nearly universal acceptance of the rule in both state and federal courts establishes the value to the defendant of this procedural safeguard." Beck v. Alabama, 447 U.S. 625, 637, 100 S.Ct. 2382, 2389, 65 L.Ed.2d 392 (1980) (discussing defendant's right to receive lesser included offense instruction).

A Sixth Circuit case, Glenn v. Dallman, 686 F.2d 418 (6th Cir.1982), clearly holds that the rule is constitutionally based. In Glenn, the state trial court's jury instructions completely omitted one of the elements of the offense of aggravated burglary. As here, the disputed element was the product of a state appellate court's construction of the criminal statute. After the petitioner lost in the state courts, his case came to the Sixth Circuit via habeas corpus. The court of appeals, finding that constitutional error had occurred, granted the writ. "Where a jury sits as the finder of fact in a criminal trial," the court reasoned, "the court's instructions to the jury concerning the necessary elements of the crime charged are the only means of assuring that the State is put to its burden of establishing every element of the crime." Id. at 421. As such, the complete failure to instruct on an element of aggravated burglary deprived the defendant of due process and his right to a jury trial. Id. The court further held that the error was not harmless because it was not clear that, if

properly instructed, a rational juror would have had to return a guilty verdict. Id. at 422.

We agree with the Glenn court's analysis. Once a state deems a fact essential to the commission of an offense, as the Kirby court did with respect to great bodily harm, the state must provide fair procedures for holding the prosecution to its burden. See Rose v. Clark, —— U.S. ——, 106 S.Ct. 3101, 3114, 92 L.Ed.2d 460 (1986) (Blackmun, J., dissenting) ("The Framers chose to protect defendants, not primarily by regulating the substance of the criminal law, but by establishing certain trial procedures to be followed in a criminal case."). At a minimum this means informing the jury of each of the required elements of the government's proof. Without an instruction that performs this minimal task, the defendant's right to a jury determination of his guilt or innocence—a right protected by the fourteenth amendment's due process clause, Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)— is little more than a matter of constitutional theory.

### B. Supreme Court Cases

Although the Supreme Court has never been squarely faced with the question presented in Glenn, its precedents strongly support the Glenn result. Indeed, every federal court to consider the question since the Court decided In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), has agreed that a conviction procured without any jury instruction on an essential element of the offense is constitutionally invalid.[8]

---

8. See, e.g., United States v. Voss, 787 F.2d 393 (8th Cir.), cert. denied, —— U.S. ——, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986); Batiste v. Blackburn, 786 F.2d 704 (5th Cir.1986); Potts v. Zant, 734 F.2d 526 (11th Cir.1984), cert. granted and judgment vacated on other grounds, —— U.S. ——, 106 S.Ct. 3328, 92 L.Ed.2d 734 (1986); Glenn v. Dallman, 686 F.2d 418 (6th Cir.1982); Mills v. Shepherd, 445 F.Supp. 1231 (W.D.N.C. 1978), aff'd mem., 605 F.2d 1203 (4th Cir.1979). As recently as last term the Court endorsed the position of the lower courts when it stated in dicta:

A defendant charged with a serious crime has the right to have a jury determine his guilt or innocence, Duncan v. Louisiana, 391 U.S. 145 [88 S.Ct. 1444, 20 L.Ed.2d 491] (1968), and a jury's verdict cannot stand if the instructions provided the jury do not require it to find each element of the crime under the proper standard of proof. Sandstrom v. Montana, 442 U.S. 510 [99 S.Ct. 2450, 61 L.Ed.2d 39] (1979). Cabana v. Bullock, 474 U.S. 376, 106 S.Ct. 689, 696, 88 L.Ed.2d 704 (1986) (emphasis added).

*Winship* held that the due process clause protects an accused against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged." *Id.* at 364, 90 S.Ct. at 1073. In several key cases following *Winship*, the Court has made clear that due process is violated when jury instructions given at a criminal trial have the effect of easing the prosecution's burden of persuasion. We believe that the instructions given at Cole's trial had precisely this effect. Worse yet, the instructions had the effect of directing a verdict for the prosecution on an element of the offense, a result the Constitution absolutely condemns.

*Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), is particularly instructive in this regard. *Sandstrom* held that in a case in which intent was an element of the crime charged, a jury instruction stating that "the law presumes that a person intends the ordinary consequences of his voluntary acts" was unconstitutional. 442 U.S. at 524, 99 S.Ct. at 2459. Because the jury could have interpreted the instruction as establishing a conclusive presumption on one element of the crime, the instruction conflicted with the presumption of innocence and invaded the fact-finding province of the jury. *Id.* at 523, 99 S.Ct. at 2458. Alternatively, the Court found, because the jury could have interpreted the instruction as shifting to the defendant the burden of persuasion on the question of intent, the instruction violated the corollary to *Winship* developed in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); that is, that a state may not shift the burden of persuasion on an element of an offense to the accused by presuming that element upon proof of other elements. 442 U.S. at 524, 99 S.Ct. at 2459. The Court recognized that some jurors might have interpreted the instruction as describing no more than a permissive inference or a rebuttable presumption, *id.* at 519, 99 S.Ct. at 2456, either of which would have been constitutionally unobjectionable; nevertheless, the possibility that a reasonable juror could have given the presumption either conclusive or burden-shifting effect was enough to invali-

date the defendant's conviction. *Id.* at 524, 99 S.Ct. at 2459. *See also Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) (applying essentially similar analysis); *Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983) (plurality opinion) (same).

Clearly, if a *Sandstrom*-type instruction is invalid because it may be interpreted as describing either a conclusive or a burden-shifting presumption on an element of the offense, an instruction that completely omits an element of the offense must also be invalid. In the case of a conclusive presumption, a jury may at least ignore the instruction or rest its verdict on trial evidence rather than the presumption. But when the jury is never told that the element forms a necessary part of the crime, the matter is taken out of its hands entirely. *See Rose v. Clark,* —— U.S. ——, 106 S.Ct. 3103, 3107 & n. 8, 92 L.Ed.2d 460 (1986). The result is exactly the same as if the trial court had directed a verdict on part of the offense—and directed verdicts are of course impermissible in criminal cases. *Id.* 106 S.Ct. at 3106; *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 572–73, 97 S.Ct. 1349, 1355–56, 51 L.Ed.2d 642 (1977); *Carpenters v. United States,* 330 U.S. 395, 408–09, 67 S.Ct. 775, 782–83, 91 L.Ed. 973 (1947). Similarly, a burden-shifting instruction at least allows the defendant to prevail if he meets the particular burden; when no instruction is given, all the defendant's evidence on the issue is rendered irrelevant. *Cf. Cool v. United States,* 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972). Again, the result is the same as a directed verdict.

Compared to *Sandstrom,* this is an easy case. The *Sandstrom* instruction was ambiguous; recognizing the possibility that the jurors gave the instruction a permissible interpretation, the Court nevertheless struck down the conviction because of the risk that they did not. This case, by contrast, calls for no speculation as to the presence of jury confusion. Here the complete omission of any instruction on great bodily harm guaranteed that the jury did not find that the government had carried

its burden. If *Winship* means anything, it means that a conviction such as Cole's cannot stand.

*Henderson v. Kibbe,* 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977), which the dissent relies on, actually supports our conclusion. In *Henderson,* the petitioner challenged the trial court's failure to give an instruction *explaining* the element of causation in New York's murder statute. The court read the statute and the indictment, each of which referred explicitly to causation, to the jury, and both counsel stressed the causation issue in their arguments. *Id.* at 153, 97 S.Ct. at 1736. On these facts, the Court concluded that no *Winship* violation was shown because it was clear that the jury was aware of the causation requirement and had made a finding of causation. *Id.* at 153–54, 97 S.Ct. at 1736. The clear implication of *Henderson*'s analysis was that constitutional error would have occurred if the jury did not

have any reason to be aware of the causation requirement.

In contrast to *Henderson,* this is not a case in which the jury could have surmised that some element of the offense left undefined in the instructions had to be proven beyond a reasonable doubt. *Henderson* was a *defective instruction* case like *Sandstrom;* this is a *no instruction* case. Neither court nor counsel at Cole's trial ever so much as mentioned the great bodily harm requirement. Indeed, no one present in the courtroom seems to have been aware of it. Nothing else in the instructions or arguments cured the defect. Consequently, the jury had no way of knowing that the victim's injuries had to reach a certain level of severity before Cole could be convicted of mayhem. As we explain in the section that follows, these facts raise a grave risk that Cole's mayhem conviction was factually as well as legally erroneous.[9]

---

9. The other cases the dissent relies on are simply inapposite. In *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the defendants were convicted on jury instructions requiring them to carry the burden of proving self-defense. They maintained that this violated *Winship* because the Ohio Supreme Court, subsequent to their convictions, held that the prosecution must prove absence of self-defense beyond a reasonable doubt. Contrary to the dissent's assertion, the Ohio Supreme Court never held that since the state had to prove absence of self-defense "it [was] an element of each offense." *Post,* at 436. Indeed, the question before the United States Supreme Court was whether the requirement that the prosecution bear the burden of proof on self-defense meant that absence of self-defense was an element of the crime for purposes of *Winship.* The Court held that it did not. 456 U.S. at 119–21, 102 S.Ct. at 1567–68.

In the present case, by contrast, the state courts have found that great bodily harm *is* an element of the offense charged. *Engle,* therefore, does not speak to this situation.

*Engle* next considered whether the due process clause independently required the prosecution to bear the burden of disproving self-defense when the offense charged required *mens rea.* Though the Court concluded that this argument stated a "colorable constitutional claim," *id.* at 122, 102 S.Ct. at 1569, it refused to consider the merits because the defendants had failed to preserve the claim by making a timely objection. *Id.* at 135, 102 S.Ct. at 1575. Obviously, this aspect of the *Engle* holding does nothing to support the dissent's position.

Regarding *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), the dissent finds great significance in the fact that "[t]he Court could have held that conviction based on a misunderstanding of the elements of the offense is a constitutional error, but it did not." *Post,* at 440. As the dissent recognizes, however, *Davis* is subject to varying interpretations. Judge Posner, for example, recently viewed the facts of *Davis* as involving a clear constitutional violation. *Johnson v. United States,* 805 F.2d 1284, 1288 (7th Cir.1986) ("To punish a person criminally for an act that is not a crime would seem the quintessence of denying due process of law"). Moreover, the dissent's interpretation overlooks the well-established rule that unnecessary constitutional adjudications must be avoided.

Finally, the dissent turns the *Winship* line of cases on its head. No Supreme Court case, and no lower court case to our knowledge, has ever held that *Winship* is confined to "elements of the offense that the Constitution puts beyond the state's control." *Post,* at 438. On the contrary, the Supreme Court has repeatedly emphasized that the cases in the *Winship* sequence establish federal rules of *procedure* applicable to *state-defined offenses.* See, e.g., *McMillan v. Pennsylvania,* —— U.S. ——, 106 S.Ct. 2411, 2416, 91 L.Ed.2d 67 (1986) ("in determining what facts must be proved beyond a reasonable doubt the state legislature's definition of the elements of the offense is usually dispositive"); *Patterson v. New York,* 432 U.S. 197, 215, 97 S.Ct. 2319, 2329, 53 L.Ed.2d 281 (1977) ("shifting of the burden of proof with respect to a fact which the State deems so important that it must be either

## C. Harmless Error

Like the *Glenn* court, we need not decide whether the complete failure to instruct on a necessary element of the state's proof can *ever* be harmless error. 686 F.2d at 421 n. 2; *cf. Rose v. Clark,* 106 S.Ct. at 3108–09) (*Sandstrom* violation can be harmless error); *Jackson v. Virginia,* 443 U.S. 307, 320 n. 14, 99 S.Ct. 2781, 2790 n. 14, 61 L.Ed.2d 560 (1979) (failure to instruct on beyond a reasonable doubt standard cannot be harmless error). It is enough on the facts of this case to hold that the omission of a great bodily harm instruction may have contributed to the verdict and that Cole's mayhem conviction therefore must be reversed.

Section 939.22(14) of the Wisconsin Statutes defines great bodily harm as "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury." The Wisconsin courts take the "seriousness" requirement seriously. In *Flores v. State,* 76 Wis.2d 50, 250 N.W.2d 720 (1977), the defendant was charged with aggravated battery. The victim testified that he had lost two teeth, received 30 stitches to close a cut, was unconscious for more than an hour, was in intensive care for two and one-half days, was in the hospital for nine days, and continued to experience pain in his ankle. 250 N.W.2d at 723. Nevertheless, the Wisconsin Supreme Court found that the trial court erred in finding great bodily harm as a matter of law and re-

fusing to submit a lesser included offense to the jury. *Id.* at 724–25.

 A reasonable jury instructed on this body of law could have acquitted Cole of mayhem. Cole's victim suffered three cuts requiring eight stitches. She spent a few hours in the emergency room where she received a shot. She now has two scars and occasionally feels pain in her hand when driving. These injuries are no doubt very real to Ms. Johnson and we in no way make light of them when we suggest that they may not constitute great bodily harm. As the Instructions Committee recognized when it revised its mayhem instruction, great bodily harm means serious, often life-threatening, bodily injury. *See State v. Webie,* slip op. at 9–10. A jury could have found that Ms. Johnson's injuries did not rise to this level.

Rather than compelling a guilty verdict, the evidence of injury in this case might be insufficient as a matter of law to establish great bodily harm. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We need not decide this question, however; since the constitutional error was not harmless, it makes no difference whether the evidence was sufficient to support a guilty verdict or not. Either way, we must reverse. *See Voss,* 787 F.2d at 398, *Glenn,* 686 F.2d at 421.[10]

## VII. Conclusion

"Under our system of criminal justice even a thief is entitled to complain that he has been unconstitutionally convicted and imprisoned as a burglar." *Jackson,* 443

proved or presumed is impermissible under the Due Process Clause."); *id.* at 211 n. 12, 97 S.Ct. at 2327 n. 12 ("The applicability of the reasonable-doubt standard ... has always been dependent on how a State defines the offense that is charged in any given case").

Though the Court has recognized that *Winship* may also apply "in certain limited circumstances" to "facts not formally identified as elements of the offense," *McMillan,* 106 S.Ct. at 2417; *see also Patterson,* 432 U.S. at 210, 97 S.Ct. at 2327, it has never had occasion to declare that something is, in the dissent's terms, an "element[ ]" that the Constitution imposes on it." *Post,* at 439. Because the Court has so steadfastly resisted all efforts to constitutionalize the substan-

tive criminal law of the states, the dissent's proposal would do no more, and no less, than eviscerate *Winship.*

**10.** The dissent fails to distinguish the standard of review for evidentiary sufficiency from the considerably more stringent standard for determining harmless error. *Compare Jackson v. Virginia,* 443 U.S. at 324, 99 S.Ct. at 2791 (habeas relief available only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt"), *with Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) ("before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt").

U.S. at 323–24, 99 S.Ct. at 2791. Stevie Cole remains validly convicted of two crimes arising out of his conduct on the morning of December 20, 1980. However, his mayhem conviction, procured without any instruction on a fact the state has deemed essential to the commission of the crime, cannot stand. The judgment of the district court is reversed and Cole's petition for a writ of habeas corpus is granted. Execution of the writ is stayed on condition that the State of Wisconsin grant Cole a new trial within a reasonable time not to exceed ninety days.

EASTERBROOK, Circuit Judge, dissenting.

The court holds that the instruction defining mayhem omitted an element required by Wisconsin law, and that this violates the Constitution. Both premise and conclusion are faulty. A federal court may not hold that a state court misunderstands state law. The state court's judgment defines state law for our purposes. And failure to follow state law does not violate the Constitution; the two are distinct.

## I

Wisc.Stat. § 940.21, the mayhem statute, provides:

Whoever, with intent to disable or disfigure another, cuts or mutilates the tongue, eye, ear, nose, lip, limb or other bodily member of another, is guilty of a Class B felony.

Cole was charged with mayhem. The jury received an instruction tracking the language of the statute. The instruction came from the book of pattern jury instructions then used in Wisconsin. It told the jury that "cutting or mutilation" with intent to "disable or disfigure" are elements of the crime, but it did not ask the jury to determine whether Cole had caused "great bodily harm". Cole's lawyer did not object to the instruction.

The first protest occurred during collateral review within the Wisconsin system. The court of first instance rejected the claim that the instruction was erroneous. The court of appeals affirmed, concluding:

The defendant argues that the jury was not properly instructed on the essential elements of mayhem. The trial court gave the pattern jury instruction, which includes the essential elements of the crime. The defendant did not object to the instruction as given. Although the trial court did refer to intent to "cut or disable" instead of "disable or disfigure" twice during the instruction, in four other places within that instruction it properly referred to intent to disable or disfigure. We conclude that the instructions in their entirety properly informed the jury of the element of intent.

*Wisconsin v. Cole*, No. 81–1938–CR (Wis. App. July 20, 1982), slip op. 3–4 [108 Wis. 779, 324 N.W.2d 829 (table)] (footnotes omitted). The Supreme Court of Wisconsin declined to review this decision, and the district court denied Cole's petition for a writ of habeas corpus.

The centerpiece of the majority's holding is that mayhem includes great bodily harm. "Great bodily harm" is not mentioned in the statute. The phrase was introduced to the law of mayhem by *Kirby v. State*, 86 Wis.2d 292, 300–02, 272 N.W.2d 113, 116–17 (App.1978). *Kirby* held that "injury by conduct regardless of life" is a lesser included offense of mayhem. In order to conclude that mayhem comprises all elements of the endangerment offense, the court said that mayhem includes "great bodily harm." *Kirby* was the principal basis of Cole's argument in the Wisconsin courts, to which the prosecutor responded that this part of *Kirby* was wrongly decided, dictum, or both. The court of appeals concluded that the instructions in Cole's case "include[d] the essential elements of the crime." This means that the court thought *Kirby* wrongly decided, dictum, or both. The opinion in *Wisconsin v. Cole* was written by Chief Judge Decker, the author of *Kirby*.

As we know from *Wisconsin v. Webie*, (Wis.App.1987) [—— Wis.2d ——, 405 N.W.2d 83 (table)], the court of appeals thinks *Kirby* wrong. *Webie* held that "endangering safety by conduct regardless of life" is *not* a lesser included offense of mayhem, overruling *Kirby* in the process. The court stated in *Webie* that the reasoning in *Kirby* had two

links, of which the first "is the *addition* of the 'great bodily harm' requirement to the 'cutting or mutilation' element of mayhem." *Webie*, slip op. 7, emphasis added. *Webie* cast doubt on the "addition" of this element but stated, in light of its overruling of *Kirby's* holding: "we need not decide whether mayhem continues to incorporate the unexpressed great bodily harm requirement." *Id.* at 8, footnote omitted.

So the majority's basis for holding that the instruction in Cole's case violated state law is an overruled state decision containing language the validity of which is an open question in Wisconsin. This is not a secure foundation for saying that the decision of the Court of Appeals of Wisconsin in *Wisconsin v. Cole* is wrong. Even if we were convinced that the court of appeals goofed in construing the statute, our view of the meaning of state law would be irrelevant. The state courts' views *define* state law. "[W]e are bound by the Wisconsin Court of Appeals' interpretation of state law." *Burrus v. Young*, 808 F.2d 578, 581 (7th Cir.1986). Cole and the state contested the meaning of state law in state court; the decision of the court of appeals is binding under principles of issue preclusion (collateral estoppel). *Restatement (Second) of Judgments* § 85(1)(a) (1982). The habeas corpus jurisdiction allows relitigation of issues of federal law, but no statute allows a federal court in a collateral attack on a criminal judgment to review an issue of state law already determined between the parties to the case. *United States ex rel. Hoover v. Franzen*, 669 F.2d 433, 436–37 (7th Cir.1982) (neither the habeas corpus statutes nor principles of pendent jurisdiction allow collateral review of questions of state law).

Principles of preclusion do not bar successive applications for habeas corpus. *Salinger v. Loisel*, 265 U.S. 224, 230, 44 S.Ct. 519, 521, 68 L.Ed. 989 (1924); *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). And the modern institution of collateral attack supposes the propriety of a federal court's reexamining issues of federal law decided by a state court. *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953). See Paul

M. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 Harv.L.Rev. 441 (1963) (questioning *Brown* ); *Phelps v. Duckworth*, 772 F.2d 1410, 1417–18 (7th Cir.1985) (en banc) (concurring opinion). Yet until today no American court has denied that rulings on issues of state law, fully litigated in state court, are conclusive in subsequent federal collateral litigation.

A judgment of a state court on a question of state law "conclusively establishe[s]" the meaning of that law. *Bute v. Illinois*, 333 U.S. 640, 668, 68 S.Ct. 763, 778, 92 L.Ed. 986 (1948). "[I]t is for the [state] courts to say under its law what duty or discretion the court may have had.... We are not at liberty to conjecture that the trial court acted under an interpretation of the state law different from that which we might adopt and then set up our own interpretation as a basis for declaring that due process has been denied. We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question." *Gryger v. Burke*, 334 U.S. 728, 731, 68 S.Ct. 1256, 1257, 92 L.Ed. 1683 (1948). "Whether state statutes shall be construed one way or another is a state question, the final decision of which rests with the courts of the State. The due process clause in the Fourteenth Amendment does not take up the statutes of the several States and make them the test of what it requires; nor does it enable this Court to revise the decisions of the state courts on questions of state law." *Hebert v. Louisiana*, 272 U.S. 312, 316, 47 S.Ct. 103, 104, 71 L.Ed. 270 (1926). "We are of course bound by a State's interpretation of its own statute and will not substitute our judgment for that of the State's when it becomes necessary to analyze the evidence for the purpose of determining whether that evidence supports the findings of a state court." *Garner v. Louisiana*, 368 U.S. 157, 166, 82 S.Ct. 248, 253, 7 L.Ed.2d 207 (1961). "[W]e have no power to revise judgments on questions of state law." *Henry v. Mississippi*, 379 U.S. 443,

447, 85 S.Ct. 564, 567, 13 L.Ed.2d 408 (1965). See also *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65, 101 S.Ct. 2176, 2180, 68 L.Ed.2d 671 (1981) (a judgment of an intermediate state court, unaccompanied by a reasoned opinion, is a construction of state law "that is binding upon us"); *United States ex rel. Garcia v. O'Grady*, 812 F.2d 347, 355-57 (7th Cir. 1987) (concurring opinion); *Hoover*, 669 F.2d at 436-37.

My colleagues reply (422-23 n. 7) that they are just following the decisions of state courts—in particular, *Kirby*. This misses the point. *Bute, Gryger,* and many similar cases presented claims of the kind Cole presses. The defendant, who had lost on a point of state law, claimed that the state court misunderstood state law, and that reference to the authentic state law—established in some other state case—would demonstrate his entitlement to relief. The Supreme Court held that it may not look outside the case under review to find the meaning of state law. That is, state law had been established *by the decision at hand.* The Supreme Court rejected exactly the sort of claim my colleagues accept.[1] See also, e.g., *Patterson v. Colorado*, 205 U.S. 454, 27 S.Ct. 556, 51 L.Ed. 879 (1907). Patterson was convicted of contempt. He sued out a writ of error, arguing that his conviction was inconsistent with authoritative precedent. The Court rejected the argument, stating (*id.* at 459-61, 27 S.Ct. at 556-58):

> The difficulties with [the claims] most pressed is that they raise questions of local law, which are not open to reexamination here. The requirement in the Fourteenth Amendment of due process of law does not take up the special provisions of the state constitution and laws into the Fourteenth Amendment for the purposes of the case, and in that way subject a state decision that they have been complied with to revision by this court. . . . It is argued that the decisions . . . in the present case, were contrary to well-settled previous adjudications in the same court, and this allegation is regarded as giving some sort of constitutional right to the plaintiff in error. . . . There is no constitutional right to have all general propositions of law once adopted remain unchanged. Even if it be true, as the plaintiff in error says, that the Supreme Court of Colorado departed from earlier and well-established precedents to

---

1. Take *Bute,* for example. The defendant claimed that he was entitled to counsel and that the state court had not used the proper procedure in taking his plea. The Supreme Court of Illinois rejected the contentions in a brief opinion. *People v. Bute*, 396 Ill. 588, 72 N.E.2d 813 (1947). Bute's brief in the Supreme Court (No. 398, October Term, 1947, Pet. Br. 32-37) collected a great many cases of the Supreme Court of Illinois, none of which that court had cited (let alone distinguished), to support the proposition that the procedure at which the plea was taken was defective. Bute observed that Illinois cases did not require a judge taking a plea to ask the accused whether he wanted counsel and maintained that it must be presumed that the state courts had done the same this time around. The Supreme Court replied (333 U.S. at 668, 68 S.Ct. at 778, emphasis added): "The Supreme Court of Illinois has affirmed both sentences. It has *thus* conclusively established their compliance with Illinois law." The Court then observed that Illinois had a statute requiring courts to notify defendants of their right to counsel and concluded that the affirmance of the judgment meant that this statute had been folowed—despite the lack of discussion of the subject by the state court, and despite earlier, seemingly contrary decisions of the state court.

There was a similar line of argument in *Gryger.* The defendant, deprived of counsel at the sentencing hearing, argued that his need for a lawyer was demonstrated by the sentencing court's many mistakes of law. For example, the transcript of the sentencing hearing suggested that the judge erroneously thought a life sentence mandatory, an impression counsel could have corrected. See No. 541, October Term, 1947, Pet. Br. 26, and the Transcript of Record 94-95 in the Supreme Court. The judge did not write an opinion, and neither did any appellate court. There was utter silence by the state's judges on what seemed to be an egregious error of state law. About this the Supreme Court wrote: "It is said that the sentencing judge prejudiced the defendant by a mistake in construing the Pennsylvania Habitual Criminal Act in that he regarded as mandatory a sentence which is discretionary. . . . [It] is for the Pennsylvania courts to say under its law what discretion or duty the court may have had. . . . [The sentencing judge's] action has been affirmed by the highest court of the Commonwealth." 334 U.S. at 731, 68 S.Ct. at 1257. It was the fact of affirmance, and not the court's explanation (for there was none) that established the decision's compliance with state law.

meet the exigencies of the case, whatever might be thought the justice or wisdom of such a step, the Constitution of the United States is not infringed.... [T]he decision of a court upon a question of law, however wrong and however contrary to previous decisions, is not an infraction of the Fourteenth Amendment merely because it is wrong or because earlier decisions are reversed.

*Patterson* is functionally identical to our case. The state court decided without discussing the cases on which the defendant had relied; the defendant asserted that the decision conflicted with these earlier, authoritative expressions of state law. To this the Supreme Court replied: So what? We should do the same.

The cases I have been discussing were direct appeals. In such cases the Court's power is at its zenith; the Court probably has the constitutional power to decide all issues, including state issues, in cases within its appellate jurisdiction. See Charles Warren, 2 *The Supreme Court in United States History* 682 (rev. ed. 1926); Richard A. Matasar & Gregory S. Burch, *Procedural Common Law, Federal Jurisdictional Policy, and Abandonment of the Adequate and Independent State Grounds Doctrine,* 86 Colum.L.Rev. 1291 (1986). But the Court disclaimed a power of inquiry nonetheless. *Murdock v. City of Memphis,* 87 U.S. (20 Wall.) 590, 22 L.Ed. 429 (1875). Whether the case be criminal or civil within the appellate jurisdiction, the rule is identical. E.g., *Herb v. Pitcairn,* 324 U.S. 117, 125–26, 65 S.Ct. 459, 462–63, 89 L.Ed. 789 (1945); *Brinkerhoff-Faris Co. v. Hill,* 281 U.S. 673, 680 n. 7, 50 S.Ct. 451, 454 n. 7, 74 L.Ed. 1107 (1930) (collecting cases dealing with alterations in the interpretation of state law). A federal court may not disagree with a state official's interpretation of state law and use its own view as a basis of relief against the officials, even if no state court has spoken, see *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* at 106, 104 S.Ct. at 911. Cf. *Huggins v. Isenbarger,* 798 F.2d 203, 207–09 (7th Cir.1986) (concurring opinion). But ours is not even a case on direct review. It is a case on collateral review. If the Supreme Court has foresworn review of state issues on direct appeal, it must follow that the inferior courts may not hear the same issues on collateral review. When a state court has addressed the merits and resolved the disputed question of state law between the very parties to the federal litigation, and its decision has become final, that decision is conclusive.

A belief that a decision is wrong is not a ground on which to disregard it. Whether a decision is right or even reasoned is irrelevant for purposes of determining its preclusive effect. The *judgment*, not the opinion, supplies the preclusion. See *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 480, 102 S.Ct. 1883, 1896, 72 L.Ed.2d 262 (1982) (a state court's judgment necessarily conclusively establishes propositions of state law, even though the court did not write an opinion); *Harris Trust & Savings Bank v. Ellis,* 810 F.2d 700, 705 (7th Cir.1987) (giving preclusive effect to a "perfunctory" and unreasoned finding, because it was essential to the judgment); *Barrington Press, Inc. v. Morey,* 816 F.2d 341 (7th Cir.1987); *Restatement (Second) of Judgments* § 27 and comment d (1982). We may not reexamine a decision of a state court on the ground that it is inconsistent with some earlier case; forbidding such inquiry is what preclusion is all about. Principles of preclusion apply even after it has been authoritatively established that a decision was wrong. *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398–400, 101 S.Ct. 2424, 2427–29, 69 L.Ed.2d 103 (1981). If error were enough to allow relitigation, doctrines of preclusion would be gone. *Button v. Harden,* 814 F.2d 382, 385 (7th Cir.1987). Cf. *Sanders,* 373 U.S. at 17, 83 S.Ct. at 1078, and *United States v. Mazak,* 789 F.2d 580 (7th Cir.1986), both holding that only an intervening change of law allows a federal court to redetermine even a federal issue in collateral proceedings.

My colleagues do not cite any case for the proposition that a federal court may revisit an issue of state law litigated and decided in state court. We have held that it may not. E.g., *Hoover*, 669 F.2d at 436–37. Perforce they have not found a case saying that an inadequate discussion of the state issue allows a federal court to find its decision to be erroneous. Other courts of appeals have held that collateral attack may not be used to question the state court's disposition of an issue of state law even after it has been held erroneous within the state system. For example, in *Willard v. California*, 812 F.2d 461, 463 (9th Cir.1987), the state court gave the jury an instruction that, the Supreme Court of California later held in a different case, was a violation of state law because it cast the offense as a general rather than a specific intent crime. The court of appeals held that even this specific holding by the state's highest court did not allow the federal court to say that the instruction was erroneous under state law—and it proceeded to decide that a general-intent instruction was constitutionally sufficient.

My colleagues reply (422–23 n. 7) that they need not offer authority because they are not doing what I believe they are doing. As they describe things, they are deciding an issue of state law, so far undetermined between these parties, in the way an opinion of a state court requires that it be decided. This does not dispense with the need for authority, however; my colleagues do not identify a statute or case establishing that a federal court may decide an issue of state law on collateral review, whether or not the issue had previously been decided by a state court. *Hoover* and *Willard* among recent appellate cases look the other way, as do the Supreme Court's decisions collected above.

Moreover, my colleagues' characterization is accurate only if deciding an issue

is the same thing as providing a rationale. The judge who presided at Cole's trial made a decision of state law when he gave the instruction; the court reaffirmed that decision on collateral attack when it rejected a contention that the instruction is erroneous; Cole took an appeal based largely on *Kirby*, and the Court of Appeals of Wisconsin affirmed, explaining that the instruction "includes the essential elements of the crime", thus deciding the issue for a third time; the Supreme Court of Wisconsin declined to disturb the judgment. Matters on which a judgment depends are "decided" no matter what the court writes or omits.[2] And here the state court was not silent; it was explicit. My colleagues' point is not that the issue lies undecided; it is that the appellate opinion did not include a sufficient explanation. This is all the difference in the world under ordinary principles of preclusion. When this court says "We have considered appellant's other arguments and conclude that they lack merit", or when the Fifth Circuit's whole discussion is "Affirmed. See Local Rule 21", or when the Supreme Court says "The appeal is dismissed for want of a substantial federal question", it is deciding the merits. *Hicks v. Miranda*, 422 U.S. 332, 342–46, 95 S.Ct. 2281, 2288–90, 45 L.Ed.2d 223 (1975). The decision has slight precedential effect, *Mandel v. Bradley*, 432 U.S. 173, 176–77, 97 S.Ct. 2238, 2240–41, 53 L.Ed.2d 199 (1977), but it is conclusive for the parties. The majority confuses the precedential effect of a decision with its preclusive effect. Whether the instruction accurately states the elements of mayhem was decided in *State v. Cole*, and my colleagues are reviewing (and disagreeing with) that decision. Such review is both unprecedented and unauthorized.

The only cases that come close are those dealing with "inadequate" state procedural

---

**2.** The court offered an alternative ground, that Cole's failure to object at trial forfeited the issue. Alternative grounds are preclusive on each branch of the reasoning. Jo Desha Lucas, *The Direct and Collateral Estoppel Effects of Alternative Holdings*, 50 U.Chi.L.Rev. 701, 703 & n. 15 (1983) (collecting cases); cf. *Phillips v. Lane*, 787 F.2d 208, 211–14 (7th Cir.1986); *United*

*States ex rel. Merneigh v. Greer*, 772 F.2d 322, 325–28 (7th Cir.1985). I agree with my colleagues that under *Barrera v. Young*, 794 F.2d 1264 (7th Cir.1986), the state has forfeited reliance on a forfeiture argument. This does not detract from the preclusive effect of each distinct holding, however.

grounds, those invoked randomly or with hostility to the federal interest at stake. See *Henry; James v. Kentucky,* 466 U.S. 341, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984). See also Terrance Sandalow, *Henry v. Mississippi and the Adequate State Ground: Proposals for a Revised Doctrine,* 1965 Sup.Ct.Rev. 187; Lea Brilmayer, *State Forfeiture Rules and Federal Review of State Criminal Convictions,* 49 U.Chi.L. Rev. 741, 759–63 (1982). The doctrine of the "inadequate" state ground does not allow a federal court to redetermine the accuracy of the state court's decision on a matter of state law; it is limited to a decision that the state procedural ground does not prevent consideration of the substantive federal issue. No one says that the Court of Appeals of Wisconsin cooked up a state ground to avoid a legitimate federal claim; there is no federal claim independent of Cole's argument that the state court erred in construing the state's substantive law. And that claim is beyond the power of any federal court to consider.

**II**

If there were any room for a federal court to review a state court's conclusions of state law, we could not proceed in the majority's fashion. My colleagues say that we may decide the issue of state law because the Court of Appeals of Wisconsin did not discuss *Kirby.* The majority writes as if the state court were a federal adminis-

trative agency and we were reviewing its decision under the Administrative Procedure Act. Agencies must follow their precedents or explain why not. E.g., *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 42, 57, 103 S.Ct. 2856, 2866, 2874, 77 L.Ed.2d 443 (1983); *Automobile Workers v. NLRB,* 802 F.2d 969, 974 (7th Cir.1986). This doctrine has never been applied to courts. The law develops through subtle changes, many unarticulated or even denied. *Automobile Workers,* 802 F.2d at 974. Perhaps courts ought to be candid about what they are doing and supply complete explanations, but candor and completeness, however desirable, are not things a federal court can demand of a state court. See *Patterson v. Colorado,* rejecting a claim of the sort my colleagues accept. The federal courts do not demand complete explanation of themselves.[3] More than a few Justices, including some of the greatest, have been known for epigrammatic assertion or declamatory certitude rather than detailed exposition.

It is easy to understand, at all events, why the state court omitted a complete explanation. It did not publish the opinion, so it was writing only for the parties. Doubtless the court of appeals would have explained things more fully had it decided to publish the opinion. My colleagues reason that the judges who joined *Wisconsin*

---

**3.** *Motor Vehicle Manufacturers* illustrates the point. The Court announced the principle that administrative agencies must give reasons when they change course. It did not cite any statutory source for this requirement, and it is hard to find one. Yet in *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978), the Court had held that the judiciary may not add to the procedures that statutes establish for the conduct of administrative agencies. By imposing an extra-statutory rule, the Court changed course without giving reasons, something it said agencies may not do. Is *Motor Vehicle Manufacturers* "wrong" because inconsistent with *Vermont Yankee?* Did it overrule or modify *Vermont Yankee* without mention?—something my colleagues seem to think impossible. Cf. Cass R. Sunstein, *Deregulation and the Hard-Look Doctrine,* 1983 Sup.Ct.Rev. 177, 184, 209–13. Authoritative decision without reasoned elaboration is common, as still

another part of *Motor Vehicle Manufacturers* shows. The agency's principal argument in the case was that the Administrative Procedure Act's "arbitrary and capricious" standard of judicial review requires of an agency the same sort of justification that the due process and equal protection clauses require of legislatures. The Solicitor General's brief supported this argument with an extensive discussion of the legislative history of the Administrative Procedure Act. The Court rejected the argument in a footnote, 463 U.S. at 43 n. 9, 103 S.Ct. at 2866 n. 9, neither discussing the legislative history nor giving any reason. The Court did not hold itself to the standard of reasoned elaboration it imposed on the agency. See also *Santa Clara County v. Southern Pacific R.R.,* 118 U.S. 394, 396, 6 S.Ct. 1132, 1148, 30 L.Ed. 118 (1886) (declaring, without explanation, that corporations are "persons"). May we hold state courts to a higher standard?

*v. Cole* could not have intended to "change" the law established in a published opinion. This begs the question. Perhaps there was nothing to change. The majority reasons: (1) the statement in *Kirby* is holding rather than dictum; (2) *Cole* did not purport to change the holding of *Kirby;* therefore (3) "great bodily harm" is an element of mayhem, and *Cole* is wrong. Why not the following, more respectful approach?: (1) *Cole* held that an instruction omitting "great bodily harm" complies with Wisconsin law; (2) courts of Wisconsin are at least as good as we at interpreting Wisconsin law; therefore (3) the "great bodily harm" language in *Kirby* is dictum. This approach reconciles the two cases rather than destroying one of them. Considering that the same judge wrote both opinions, we ought to be able to reconcile them.

Perhaps *Kirby* and *Cole* are simply irreconcilable. In that event our task (if we have one) is to find out which case is right, not to say that first in time is first in right. When we are authorized to consider issues of state law, in diversity cases, we may encounter divergent appellate decisions. We would not say that the first decision is right and any later decision wrong. We would ask, instead, which decision is most strongly supported by the language, structure, and history of the statute; we would look at opinions of the supreme court of the state in question and of other states, to find out how similar problems have been resolved. E.g., *Enis v. Continental Illinois National Bank,* 795 F.2d 39 (7th Cir. 1986); *Katapodis v. Koppers Co.,* 770 F.2d 655 (7th Cir.1985). See *King v. Order of Travelers,* 333 U.S. 153, 158, 68 S.Ct. 488,

491, 92 L.Ed. 608 (1948) (in diversity cases federal courts are not always bound by the decisions of intermediate state courts); *Williams, McCarthy, Kinley, Rudy & Picha v. Northwestern National Insurance Group,* 750 F.2d 619, 624–25 (7th Cir.1984). The one thing we would not do in a diversity case is what the majority does today— *assume* that the first decision is right and ask only whether the second is consistent with the first. If sequence matters, it ought to be the other way 'round. *Hudgens v. NLRB,* 424 U.S. 507, 517–18, 96 S.Ct. 1029, 1035–36, 47 L.Ed.2d 196 (1976) (later decision establishes legal rule); cf. *Restatement (Second) of Judgments* § 15 (1982) ("When in two actions inconsistent final judgments are rendered, it is the later, not the earlier, judgment that is accorded conclusive effect in a third action under the rules of res judicata."); Ruth Bader Ginsburg, *Judgments in Search of Full Faith and Credit: The Last-in-Time Rule for Conflicting Judgments,* 82 Harv. L.Rev. 798 (1969). We could not follow the first opinion as a general matter, and certainly we may not do this after the first decision has been overruled.

If we are to assess state decisions for "error", why give such primacy to a decision of an intermediate court? Why not say that only the decision of the supreme court of the state allows a federal court to call the decision of an appellate court "wrong"? Our failure to observe the hierarchy within Wisconsin courts—to give any weight to the fact that *Kirby* and *Cole* were rendered by the same court, indeed were written by the same judge—contributes to the majority's error.[4]

---

**4.** The hierarchy within Wisconsin also is a sufficient reply to the majority's argument (420–21) that the due process clause would have inhibited Wisconsin's courts from overruling *Kirby* in Cole's case. *Kirby* is a decision of an intermediate court. Suppose the judge at Cole's trial had been aware of *Kirby,* had believed its articulation of the elements of mayhem wrong, and had given the pattern jury instruction, after which Cole had pursued the matter on direct appeal to the Supreme Court of Wisconsin. If the Supreme Court of Wisconsin had affirmed on the ground that *Kirby* misunderstood the elements of mayhem, Cole would not have had a claim under *Bouie v. City of Columbia,* 378

U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). The Supreme Court of the United States has never suggested that the construction of a criminal statute by an *intermediate* state court requires the state to apply that decision to all crimes committed before the date of its reversal or overruling. If there were such an entitlement, every conflict among the circuits on the construction of a federal statute would vest in defendants throughout the country the right to receive the most favorable construction adopted by any circuit. The Supreme Court of the United States, however, regularly resolves conflicting interpretations of federal criminal law, in the process affirming (or reinstating) convic-

I would be less concerned if I thought today's decision a sport, governing only the interaction between overruled and unpublished opinions. It is not, however. It establishes the proposition that state courts are just like administrative agencies. They must justify all departures from precedent. We do not demand this in diversity cases, where we may have to decide whether an intermediate state court understands state law. In both *Katapodis* and *Enis* we dealt with conflicting state authority that did not cross-cite, and we did not suggest that one court's failure to cite an earlier case made the later case "wrong". Yet under the majority's approach, if a state court does not reconcile its decision with some earlier opinion, then it is "wrong", and the judgment may be set aside on collateral attack by a federal court. Every time decisions within a state court system conflict—which is to say, frequently—the state is in danger of having a federal court upset its judgments. No case in the history of the Republic supports such intrusive review of a state court's decisions.

### III

Let us now suppose that the omission of the instruction was an error of state law. This case is here under 28 U.S.C. § 2254(a), which states that a court shall entertain a petition for habeas corpus "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 875,

79 L.Ed.2d 29 (1984). See also, e.g., *Smith v. Phillips,* 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982); *Mosley v. Moran,* 798 F.2d 182, 185 (7th Cir.1986); *Nichols v. Gagnon,* 710 F.2d 1267, 1269 (7th Cir.1983); *Hoover,* 669 F.2d at 436–37.

The majority responds with the following syllogism: (1) the Constitution requires that every element of the offense be established beyond a reasonable doubt; (2) an instruction that omits an element of the offense, as state law enumerates the elements, allows a conviction without that element's being established beyond a reasonable doubt; therefore (3) the error of state law violates the Constitution. This would be a more impressive syllogism had it not been rejected by the Supreme Court in *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).[5]

The three defendants in *Engle* were charged with violent crimes under the law of Ohio. Each pleaded self-defense. The judge in each gave an instruction assigning to the defendant the burden of proving self-defense. The Supreme Court of Ohio later held that this particular instruction was erroneous as a matter of state law. The state courts nonetheless refused to give the defendants the benefit of that decision. The defendants maintained that this violated the Constitution in light of *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), which holds that the prosecution must establish every element of the offense beyond a reasonable doubt. According to the Supreme Court of Ohio, the state had to show lack of self-defense,

---

tions that could not have been obtained under the law of one or more courts of appeals at the time the acts were committed. *Bouie* holds not that decisions of intermediate courts may not be altered retrospectively, but that the state's law must give fair notice of what is prohibited. The mayhem statute gives this notice; Cole does not rely on *Bouie.* If a case were to delete an element of the offense listed in the statute or recognized by the highest court of the jurisdiction, there would be a serious claim, but neither of these things happened or could have happened in *Cole.*

**5.** *Glenn v. Dallman,* 686 F.2d 418 (6th Cir.1982), the only appellate case that, according to the majority, holds that omitting an instruction on

an element required by state law violates the Constitution, does not discuss *Engle. Glenn* also does not stand for that proposition. The state trial judge gave an instruction that, the Supreme Court of Ohio later held, was erroneous. The only issue debated by the parties in the Sixth Circuit was harmless error, the state apparently having conceded that the omission was a constitutional problem. The Sixth Circuit therefore did not decide the question in our case. The shared assumption in *Glenn* is not a holding on a contested issue. See *United States v. House,* 808 F.2d 508, 511 (7th Cir.1986); *Glidden v. Chromalloy American Corp.,* 808 F.2d 621, 625 (7th Cir.1986).

making it an element of each offense; therefore, the defendants insisted, they were entitled to relief. The Supreme Court of the United States rejected this argument on the merits, holding that it is not even based on the Constitution. 456 U.S. at 119–21, 102 S.Ct. at 1567–68.

The Court treated the argument as one under state law. It gave two reasons. First, it held, the state need not treat the absence of self-defense as an "element" of the offense. In that event, an error in assigning the burden is not one to which *Winship* applies. 456 U.S. at 120–21, 102 S.Ct. at 1567–68. Second, it declared that errors of state law do not violate the due process clause—relying on *Gryger* and several other cases, including *United States ex rel. Burnett v. Illinois,* 619 F.2d 668, 670–71 (7th Cir.1980). 456 U.S. at 121 n. 21, 102 S.Ct. at 1568 n. 21. See also *Willard,* 812 F.2d at 463; *Hoover,* 669 F.2d at 436–37; *United States ex rel. Waters v. Bensinger,* 507 F.2d 103, 104–05 (7th Cir. 1974). The constitutional question, as the Court saw it, was whether the state *had* to assume the burden on the absence of self-defense, or whether instead the Constitution allowed the state to shift that burden to the accused. 456 U.S. at 121–22, 102 S.Ct. at 1568–69. It then held that the defendants had neglected to preserve that claim in state court, *id.* at 123–35, 102 S.Ct. at 1569–76. (The Court recently answered the reserved question, holding that a state may assign to the accused the burden of establishing self-defense. *Martin v. Ohio,* — U.S. —, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987).)

Our case is in much the same posture. If the question is whether "great bodily harm" *is* an element of mayhem, the response is that that is a question of state law. If the question is whether "great bodily harm" *must be* an element of mayhem, the answer is No. The state may define as a "Class B felony" the offense of cutting or mutilating the "tongue, eye, ear, nose, lip, limb or other bodily member" of a person "with intent to disable or disfigure". A state with the power to condemn on this basis also could, if it chose, define an offense of cutting with intent to disfig-

ure, subject to an affirmative defense that the cut had not caused great bodily harm. If the Constitution allows this option, then it is hard to say that *Winship* requires the state to prove "beyond a reasonable doubt" that Cole inflicted "great bodily harm". See *Patterson v. New York,* 432 U.S. 197, 201–02, 97 S.Ct. 2319, 2322–23, 53 L.Ed.2d 281 (1977); *McMillan v. Pennsylvania,* — U.S. —, 106 S.Ct. 2411, 2416–19, 91 L.Ed.2d 67 (1986); *Martin v. Ohio,* 107 S.Ct. at 1102–03; John Calvin Jeffries & Paul B. Stephan, *Defenses, Presumptions, and Burden of Proof in the Criminal Law,* 88 Yale L.J. 1325, 1333–56 (1979); Deborah A. Jones, *Federal Review of the Evidence Supporting State Convictions,* 79 Colum.L.Rev. 1577, 1585–89 (1979).

The strongest case for my colleagues' position is *Henderson v. Kibbe,* 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). Kibbe was convicted of murder for robbing a drunkard and leaving him in the road, where he was struck and killed by a truck. Murder is intentional conduct that causes the death of another. The case was submitted to the jury on an instruction that recited the statutory language but neglected to define "cause"—a potentially dispositive question when there may have been an intervening cause. On collateral review, the state apparently conceded that an instruction required by state law had been omitted. The Second Circuit thought this required the issuance of the writ of habeas corpus; the Supreme Court did not. The Court first asked whether the evidence satisfied the *Winship* test and concluded that it did; the jury must have found causation even on the instructions given. 431 U.S. at 153–54, 97 S.Ct. at 1736–37. Then it asked whether the omitted instruction "so infected the entire trial that the resulting conviction violates due process", *id.* at 154, 97 S.Ct. at 1737, quoting *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). To this it answered no, because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than [is] a misstatement of the law." 431 U.S. at 155, 97 S.Ct. at 1737. Because the omission "escaped notice" (*ibid.*) in the

state system, the Court thought it unlikely to have made the trial fundamentally unfair.

The answers here are the same as in *Kibbe.* Was the evidence sufficient to permit a rational jury to find "great bodily harm"? See *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979). I think so. The cuts were deep and caused a lingering disability. See Wisc.Stat. § 939.22(14) (great bodily harm, a term that appears in the battery sections of the state's code, means among other things injury "which causes a permanent or protracted loss or impairment of the function of any bodily member or organ"). How great that impairment must be to amount to "great bodily harm" is itself a question of state law, see *Garner v. Louisiana.* Was the trial fundamentally unfair? I think not, for just as in *Kibbe* the "great bodily harm" business was so insignificant that no one noticed it—not the trial judge, not the prosecutor, not the defense lawyer, not the appellate court, not even the drafters of Wisconsin's pattern jury instructions. There is a good reason (beside the pattern jury instructions) why no one paid it any heed. The definition of the offense—cutting the face or limb with intent to disable or disfigure—*implies* great injury in the run of cases. True, some knife-wielding attackers fail of their purpose, but the course of mayhem cases must be a skein of substantial, ugly wounds. The lawyers, judge, and jury in a mayhem case might think "great bodily harm" redundant in the run of cases. (This is, after all, the ground on which *Kirby* thought the element must be in the statute, even though not mentioned in its text.)

Because *Kibbe* supports the state, I need not ask whether it survived *Engle*—or even whether the inquiries in *Kibbe* are the only ones. The state won *Kibbe,* so the Court had no occasion to determine what the prisoner must demonstrate to obtain the writ of habeas corpus. *Kibbe* was an easier case for the defendant because the state not only made causation an element of the offense but also may have had to do so. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), holds that at least some elements of any offense are there because the Constitution limits the power of states to redefine the minimum standards of criminal culpability. The Court did not discuss in *Kibbe* whether causation or some substitute (such as conspiracy with others whose acts caused the death) is an essential element of murder under *Mullaney,* but the Justices apparently assumed that it is. See also *McMillan,* 106 S.Ct. at 2417; *Engle,* 456 U.S. at 122 n. 22, 102 S.Ct. at 1568 n. 22; Jeffries & Stephan, 88 Yale L.J. at 1267–71.

Ever since *Mullaney* the Court has had trouble deciding just what are the minimum elements of criminal offenses and how the state may arrange the burden on these and others it elects to add. A number of cases proclaim that the Constitution assigns either the element or the burden to the state. E.g., *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The Court attributes these decisions to *Winship,* which holds that the state must establish beyond a reasonable doubt the elements it chooses to denote as criminal. Yet at the same time the Court holds that the state may require the defendant to bear the burden on items important to culpability, so long as the state declares that the items are not "elements" of the offense. *Martin v. Ohio,* which allows the state to shift the burden on self-defense to the accused, is the latest in this line. The defendant insisted that the absence of self-defense really was an "element" of the offense for the purpose of *Winship* and *Mullaney* because the state required the prosecution to show "criminal intent", which, according to Martin, meant the absence of a legitimate motive (such as self-defense). The Court replied (107 S.Ct. at 1103):

> It is true that unlawfulness is essential for conviction, but the Ohio courts hold that unlawfulness in cases like this is the conduct satisfying the elements of aggravated murder—an interpretation of state law that we are not in a position to dispute. The same is true of the claim that it is necessary to prove a "criminal" intent to convict for serious crimes,

which cannot occur if self-defense is shown: the necessary mental state for aggravated murder under Ohio law is the specific purpose to take life pursuant to prior calculation and design.

The upshot apparently is that if Ohio had made the absence of self-defense an "element" of the crime, then the prosecutor would have had to prove that element beyond a reasonable doubt, but because Ohio *called* the absence of self-defense something else, it was free to shift the burden to the accused. A regime that makes substance turn on nomenclature has little to recommend it, cf. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 23–24, 96 S.Ct. 2882, 2896–97, 49 L.Ed.2d 752 (1976), which makes me wonder whether the Court really uses the state's designation of the factual issue (as "element" or not) as the fulcrum of the constitutional inquiry.

The allocation of burdens, no less than the identification of "elements", is important to the identification of the conduct that is to be condemned. Consider, for example, the interaction of the "element" of intent and the "defense" of insanity. The terms on which a defendant will be deemed insane are best understood as a modification of the mental element of the offense. "[C]hoice of a test of legal sanity involves not only scientific knowledge but questions of basic policy as to the extent to which that knowledge should determine criminal responsibility." *Leland v. Oregon*, 343 U.S. 790, 801, 72 S.Ct. 1002, 1008, 96 L.Ed. 1302 (1952) (note omitted). *Leland* held that a state may require the defendant to prove his insanity beyond a reasonable doubt. This holding has been assailed as inconsistent with *Winship* and *Mullaney*, see *Rivera v. Delaware*, 429 U.S. 877, 878–80, 97 S.Ct. 226, 227, 50 L.Ed.2d 160 (1976) (Brennan, J., dissenting), and in a fundamental sense it is. Yet *Rivera* reaffirmed *Leland,* and these two cases were the foundations for *Patterson* and *Martin.*

The best way to reconcile the *Winship-Mullaney-Sandstrom* line of cases with the *Leland-Patterson-Martin* line is to limit *Mullaney* (and perforce *Winship* ) to elements of the offense that the Constitution puts beyond the state's control. If the state is free to include some "element" or not—or if the state is free to call a factual inquiry an affirmative defense or otherwise make it a "non-element"—then it may assign the burden of persuasion as it pleases. The state's ability to decide whether a particular fact or conclusion is an essential ingredient of criminal culpability implies the ability to select a lesser standard of proof. *Martin* so holds, at least provided the state *calls* the disputed issue an "affirmative defense". Nomenclature should be irrelevant; if the state calls the same disputed issue an "element" it should have the same control. The ability to impose criminal condemnation on the basis of these acts minus the element implies the power to impose criminal condemnation on the same acts, with a different burden. Cf. *Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico*, —— U.S. ——, 106 S.Ct. 2968, 2979, 92 L.Ed.2d 266 (1986). (The "unconstitutional conditions" response to this "greater-power-includes-the-lesser" argument was a lot more powerful in *Posadas de Puerto Rico* than it is here, yet the Court rejected it.)

Only when the Constitution makes the resolution (in the state's favor) of some particular fact an essential ingredient of criminal condemnation does it make sense to hold that the state must prove this item "beyond a reasonable doubt" or that the instructions to the jury must elicit the jury's determination of that item. The state may be hostile to elements that the Constitution imposes on it. Collateral review ensures honest application of elements or rules imposed by higher authority. The state will not be hostile to elements that are included at the state's option. It is not necessary to use federal collateral attack to keep the state faithful to its own law—yet *only* questions of the state's own law are at issue when the state has included as an "element" of the offense something that is constitutionally unnecessary as a foundation for criminal punishment. Professors Jeffries and Stephan, and Professor Jones conclude on this basis that *Mullaney* and *Winship* apply only to

elements that the Constitution places beyond the state's control. Other elements may be modified or (as in this case) omitted without offending constitutional principles. This is essentially the path the Ninth Circuit followed in *Willard*, 812 F.2d at 463, albeit without explicit discussion, in denying collateral relief to a state prisoner convicted of an offense after a charge to the jury that omitted a specific intent instruction required by state law.

We also should remember that the question at hand is not whether Cole committed a crime, but of which offenses he should be convicted. Whatever federal role there may be in ensuring that the states supply the minimum justification for *some* criminal punishment does not extend to patrolling the details of the offenses states choose to define.[6] It is undisputed for our purposes that Cole gratuitously hacked at the victim of his robbery with a knife, and that the cuts left permanent effects. If the cutting is not mayhem, then it is aggravated battery or some similar offense. A conviction for aggravated battery may be based on "bodily harm" (minus the "great"), if there was intent to cause bodily harm (a lesser standard than mayhem's "intent to disable or disfigure"), Wisc.Stat. § 940.19(1m). See also Wisc.Stat. § 939.-63(1)(a), allowing an increased punishment when the offender uses a knife in the course of the battery—another fact not disputed. It is hard to appreciate the federal interest in requiring Wisconsin to recharacterize Cole's conduct as a different crime, when the facts the prosecutor proved at trial are sufficient under both (any version of) Wisconsin law and the eighth amendment to support imprisonment.

The approach I have sketched does not foreclose all constitutional scrutiny. It may be, for example, that proof of a subset of the statutory elements of a crime would be insufficient in light or fifth or eighth amendment rules to justify punishment of the severity a defendant received. Cole, who received 12 years' imprisonment for the mayhem component of his offense, does not make such an argument, however.[7] A further requirement, which may lead an error of state law to violate the Constitution as well, is that the state must supply "fair warning" of what it prohibits. A novel application of the criminal law may violate the Constitution. *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); see also *Marks v. United States*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). This is not a power to undo judicial constructions on the ground that they are "wrong"; the judges of the state may do pretty much what they please with questions of state law, so long as the result is comprehensible. See *Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975). The federal court may determine only whether the construction of the state law took place in advance of the criminal conduct, supplying the necessary warning. Cole does not contend that he lacked fair warning that his conduct is illegal. Given the language and longstanding construction of the mayhem statute, reflected in the pattern jury instructions, he could not. *Kirby* was the novelty. See also note 4 above.

The proposition that the Constitution is different from the law defining the elements of the crime is a commonplace in collateral review. Consider *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41

---

**6.** A proposition for which there is collateral support in the rule that for purposes of the double jeopardy clause greater and lesser versions of a crime are the "same offence". See *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

**7.** His package—24 years for armed robbery, mayhem, and operating a vehicle without the owner's consent—is less than the sentence he could have received had the state characterized the offenses the way Cole desired. Armed robbery under Wisc.Stat. §§ 939.50 and 943.32(2) allows a maximum sentence of 20 years; aggravated battery under § 940.19(1m), with the enhancement under § 939.63(1)(a)(4), allows a maximum of five years; operating a vehicle without the owner's consent, in violation of Wisc.Stat. § 943.23, allows a maximum sentence of two years; and Cole was charged with being an habitual criminal, which under Wisc. Stat. § 939.62(1)(c) allows an extra 10 years to be added to his punishment. That is a total of 37 years, or 13 more than he received.

L.Ed.2d 109 (1974). Davis was convicted of failing to report for induction into the military, and the conviction was affirmed. A panel of the same court of appeals later concluded that the offense of failure to report for induction contained an element that had been missing from the charge to the jury in Davis's case. If that was right, Davis had not committed any offense at all. The court of appeals refused to apply this rule to Davis on collateral review. The Supreme Court reversed—not because disagreement among panels about the elements of the offense is a constitutional problem, but because 28 U.S.C. § 2255, under which Davis sought relief, allows the vindication of the "laws" of the United States. 417 U.S. at 343–45, 94 S.Ct. at 2303–05. The Court could have held that conviction based on a misunderstanding of the elements of the offense is a constitutional error, but it did not; it felt compelled to decide whether a conviction unsupported by federal *law* could be attacked collaterally.

*Davis* did not reject the proposition my colleagues embrace, from which they take comfort. I suspect, though, that *Davis* was decided the way it was because the Justices thought it too plain for words that the failure to deal at trial with a statutory element of an offense is a statutory problem—even when the question was guilt versus innocence (as opposed to identifying the right crime). Many an error of law is constitutionally inoffensive, even though harmful to the accused. E.g., *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979); *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979); *Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *Johnson v. United States*, 805 F.2d 1284, 1287–88 (7th Cir. 1986); *Kramer v. Jenkins*, 806 F.2d 140, 142 (7th Cir.1986); *United States v. Widgery*, 778 F.2d 325, 329–30 (7th Cir.1985). If an error of Wisconsin law occurred during Cole's trial, that error—too negligible for anyone present to notice, or for the Court of Appeals of Wisconsin to acknowledge after full briefing—did not violate the Constitution. Unless the Constitution sub-sumes all criminal law, the judgment in this case must be affirmed.